# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,     )
    )
    )
    v.    )    I.D. No. 2103011110
    )
JAMES MACCOLL,     )
    )
    Defendant.    )

Submitted:  June 6, 2022
Decided: July 1, 2022

*Upon Consideration of Defendant's Motion to Dismiss*,
**DENIED**.

*Upon Consideration of Defendant's Motion in Limine*,
**DENIED**.

## MEMORANDUM OPINION

Mark A. Denney, Jr., Esquire, Deputy Attorney General, DEPARTMENT OF JUSTICE, Wilmington, Delaware. *Attorney for the State of Delaware*.

Eugene J. Maurer, Jr., Esquire, EUGENE J. MAURER, J.R., P.A., Wilmington, Delaware. *Attorney for Defendant James MacColl*.

**BUTLER, R.J.**

Defendant James MacColl is a former Wilmington police officer. He has been indicted on obstruction and corruption charges stemming from allegedly false statements he made during internal affairs ("IA") interviews about a shooting incident. MacColl now moves to dismiss the indictment and to exclude his statements, asserting privileges under *Garrity v. New Jersey*[1] and confidentiality protections set out in the Law-Enforcement Officers' Bill of Rights ("LEOBOR").[2] The Court concludes that *Garrity* does not apply on these facts and that MacColl lacks standing to invoke LEOBOR. Accordingly, his motions are denied.

## BACKGROUND

At this stage, the Court must assume that all the State's well-pleaded allegations are true.[3]

### A. The Gun Barrel Discrepancy

In 2019, MacColl shot a fleeing carjacking suspect. MacColl thought the suspect was armed. Evidence at the scene suggested otherwise.

A deadly force investigation followed.[4] As part of that investigation, MacColl turned in his Wilmington Police Department ("WPD") gun for testing. The ballistics

---

[1] 385 U.S. 493 (1967).
[2] 11 *Del. C.* § 9200 (2018).
[3] *See infra* Standards of Review.
[4] The State ultimately found MacColl's use of force appropriate. *See Final Report of the Department of Justice: Use of Force by Wilmington Police Department*, Del. Dep't of Just. (Nov. 4, 2019), https://attorneygeneral.delaware.gov/wp-content/uploads/sites/50/2019/11/Harris-Use-of-Force-Report-11-4-19.pdf.

results showed a mismatch between the grooves on the test rounds and the grooves on the bullets recovered from the scene. Closer inspection revealed that the gun barrel was not a WPD standard issue barrel.

WPD believed that MacColl's gun barrel was switched after the shooting. Unreported and unauthorized modifications to field firearms violate WPD policy.[5] Accordingly, WPD's Office of Professional Standards ("OPS") conducted IA interviews with MacColl to determine why the tested gun barrel did not match the bullets from the scene.[6]

## B. The IA Interviews

Before each interview, MacColl signed an "investigation rights form" (the "Form"). The Form explained that MacColl's "admissions" would not be used against him in a "subsequent criminal proceeding."[7] The Form also instructed MacColl to answer every question "truthfully[.]"[8] The Form last warned that any failure to answer could result in "disciplinary action[,]"[9] *e.g.*, termination.

MacColl denied changing his gun barrel after the shooting. Instead, MacColl stated that he replaced the barrel over a year earlier to improve the accuracy of the

---

[5] *See* Exs. A–B to Def.'s Mot. to Dismiss (WPD Compls.).
[6] MacColl was interviewed multiple times by State and WPD criminal investigators. For simplicity, and because MacColl's motions focus solely on the IA interviews, this decision does not discuss statements made during other interviews.
[7] Ex. B to Def.'s Mot. to Dismiss ¶ 4 (Investigation Rights Form).
[8] *Id.* ¶ 5.
[9] *Id.* ¶ 7.

firearm. Despite that timeline, MacColl produced what he claimed was the "original"[10] barrel to OPS in the middle of an interview.

In the end, MacColl never admitted to a crime or any wrongdoing. But he could not harmonize his answers with the ballistics test results. Nor could he provide consistent accounts of his post-shooting whereabouts, which seemed to include an unsupervised trip to a WPD weapons locker.

## C. The Subpoena

The State subpoenaed the IA interview transcripts from WPD.[11] WPD produced them without objection. A few months after the State received the transcripts, WPD terminated MacColl for an unrelated violation.

Based on the interview transcripts, and separate investigations, the State concluded that MacColl's statements to OPS were false. That allegation led to this three-count indictment.

---

[10] The State believes that this barrel was not the true original, but rather was a lookalike MacColl acquired to bolster his credibility. The State intends to argue at trial that MacColl tampered with three barrels: the true original barrel (which apparently was never produced); the modified barrel; and the false original barrel.

[11] MacColl had been slated to be the State's key witness in the felony case against the carjacking suspect. The State avers that it initially sought MacColl's IA interviews to determine whether the transcripts contained *Brady* or *Giglio* material discoverable in the carjacking case. Citing the impact of MacColl's IA interviews on his witness credibility, the State eventually dropped the carjacking case. *See* Ex. A to State's Opp'n to Def.'s Mots. to Dismiss & in Lim. (*Nolle Prosequi* Mem.).

4

## D. The Indictment

The indictment charges MacColl with (1) Providing a False Statement to Law Enforcement;[12] (2) Tampering with Physical Evidence;[13] and (3) Official Misconduct.[14] Falsity or deception is a material element of Providing a False Statement and Tampering with Physical Evidence.[15] The State suggests that evidence of falsity or dishonesty also may be used to prove Official Misconduct.[16]

## E. These Motions

MacColl has moved to dismiss the indictment and to exclude his interview statements from evidence. He contends that *Garrity* bars the State from prosecuting him for any of his incriminating interview statements because he made his statements under penalty of termination. He insists alternatively that incriminating

---

[12] 11 *Del. C.* § 1245A (2012).

[13] *Id.* § 1269 (1995).

[14] *Id.* § 1211(1) (1995).

[15] *Id.* § 1245A(a) (False Statement) (requiring the State to prove that the person "*knowingly provides any false written or oral statement* to the law-enforcement officer or agency when such statement is material to the investigation" (emphasis added)); *id.* § 1269 (Tampering) (requiring the State to prove that the person "*makes, devises, alters or prepares false physical evidence*"; or "*[p]roduces or offers false physical evidence at a proceeding, knowing it to be false*"; or "suppresses" evidence designated for use in "an official proceeding" by "any act of *concealment* . . . or *deception*" (emphases added) (enumeration omitted)).

[16] *See id.* § 1211(1) ("A public servant is guilty of official misconduct when, intending to obtain a personal benefit or to cause harm to another person: . . . commits an act constituting an *unauthorized exercise of official functions*, *knowing that the act is unauthorized* . . . ." (emphasis added) (enumeration omitted)).

5

statements contained in police IA files are protected by LEOBOR from disclosure and use. The State opposes MacColl's motions, which are now ripe for decision.

## STANDARDS OF REVIEW

### A. Motion to Dismiss

In considering a motion to dismiss an indictment, the Court "accepts as true all well-pleaded factual allegations in the indictment."[17] The Court will not dismiss an indictment unless the indictment does not provide notice or allow for a defense or otherwise is legally deficient.[18] "Unless there is a stipulated record, or unless immunity issues are implicated, a pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence."[19]

### B. Motion to Exclude

The Court balances evidentiary objections against "the end of ascertaining the truth[.]"[20] The Court will not exclude evidence unless the evidence is irrelevant or

---

[17] *State v. Herbert*, 2022 WL 811175, at *1 n.1 (Del. Super. Ct. Mar. 17, 2022).
[18] *See Ciccaglione v. State*, 474 A.2d 126, 128 (Del. 1984); *Malloy v. State*, 462 A.2d 1088, 1093 (Del. 1983); Del. Super. Ct. Crim. R. 12(b)(2).
[19] *United States v. DeLaurentis*, 230 F.3d 659, 660 (3d Cir. 2000). *See Wright v. Pierce*, 43 F. Supp. 3d 405, 410 n.3 (D. Del. 2014) (noting that Delaware courts use federal standard in analyzing indictment sufficiency); *see generally Valentin v. State*, 74 A.3d 645, 648 n.10 (Del. 2013) (noting applicability of federal precedent to Superior Court Criminal Rules that "substantively mirror[]" Federal Rules of Criminal Procedure).
[20] Del. R. Evid. 102.

inadmissible under the Rules of Evidence, a statute, or applicable precedent.[21] Evidence that suffers "some constitutional defect is obviously inadmissible."[22]

## ANALYSIS

As support for his motions, MacColl cites privileges afforded by *Garrity* and protections codified in LEOBOR. No Delaware case has discussed the interaction between IA investigations and *Garrity* and LEOBOR. Nevertheless, MacColl's motions must be denied because they fail under federal precedent and general principles of standing. As explained below, *Garrity* does not protect statements, like those at issue here, that are alleged to be false. And MacColl lacks standing to raise his LEOBOR claim because he has not shown an injury that the Court may redress.

**A. MacColl is not entitled to *Garrity* immunity.**

**1. Consistent with the Fifth Amendment, *Garrity* only protects truthful statements made by police officers under penalty of termination.**

MacColl's motions begin with *Garrity v. New Jersey*.[23] *Garrity* concerned a New Jersey statute that required police officers to answer questions put to them in an internal investigation or else be terminated.[24] A divided United States Supreme Court held that self-incriminating statements made by police officers under penalty

---

[21] *Id.* R. 402.
[22] *Id.* R. 402 cmt.
[23] 385 U.S. 493 (1967).
[24] *Id.* at 499.

of termination are "coerced" within the meaning of the Fifth Amendment.[25] *Garrity*

thus gave such statements a "self-executing use immunity."[26] Under *Garrity*, the

government cannot use a police officer's self-incriminating statements to build

"subsequent criminal proceedings" against the officer if the officer made the

statements at the risk of losing his job.[27]

One might rashly conclude that *Garrity* is an "inflexible, *per se* rule[.]"[28] But

the rule is not absolute.[29] *Garrity* "conceded" that there may be "situations where"

---

[25] *Garrity* analogized its idea of "coercion" to principles of ancient Hebrew law. *See id.* at 497 n.5. *Garrity* did not explain why police officers should be entitled to more Fifth Amendment protection than anyone else. Indeed, "there is no constitutional right to be a policeman." *McAuliffe v. City of New Bedford*, 29 N.E. 517, 517 (Mass. 1892) (Holmes, J.). For that reason, some courts have only reluctantly accepted the premise that the mere threat of police termination is coercive. *See, e.g.*, *Uniformed Sanitation Men Ass'n v. Comm'r of Sanitation*, 426 F.2d 619, 624 (2d Cir. 1970) (*Garrity* coercion is a bit of *ipse dixit*); *cf. United States v. Friedrick*, 842 F.2d 382, 395 (D.C. Cir. 1988) (*Garrity* analysis involves a subjective-objective test).

[26] *United States v. Burge*, 2009 WL 2972915, at *4 (N.D. Ill. Sept. 11, 2009).

[27] *Garrity*, 385 U.S. at 500.

[28] *Id.* at 531 (White, J., dissenting). *See also id.* at 510 (Harlan, J., dissenting) (opining on ground that *Garrity* witnesses should be required to prove their "statements were, when given, *involuntary in fact*" (emphasis added)).

[29] *See United States v. French*, 216 F. Supp. 3d 771, 776 (W.D. Tex. 2016) ("*Garrity* is not implicated every time a police officer is questioned by law enforcement."), *aff'd*, 708 F. App'x 205 (5th Cir. 2018); *United States v. Indorato*, 628 F.2d 711, 716 (1st Cir. 1980) (*Garrity* inapplicable where threat of termination was not explicit); *United States v. Bloom*, 450 F. Supp. 323, 337 (E.D. Pa. 1978) (*Garrity* inapplicable where penalty was not termination); *see also Salinas v. Texas*, 570 U.S. 178, 185 (2013) (plurality opinion) ("[T]hreats to withdraw a government benefit such as public employment may *sometimes* make exercise of the [self-incrimination] privilege [too] costly[.]" (emphasis added) (citing *Garrity*, 385 U.S. at 497)).

an officer "'volunteers the information[]'" later used against him.[30]  In other words, *Garrity* left open the possibility that some statements made by police officers under penalty of termination will not be protected from subsequent prosecution.

False statements close that circle.  Post-*Garrity* decisions make clear that neither the Fifth Amendment nor *Garrity* itself protects false statements, even when the statements are made under penalty of termination.

### a.  The Fifth Amendment does not protect false statements.

The Fifth Amendment of the United States Constitution, applicable to the States via the Fourteenth,[31] provides that no person "shall be compelled in any criminal case to be a witness against himself[.]"   The Fifth Amendment's "sole concern . . . is government coercion."[32]  It "does not preclude a witness from testifying voluntarily in matters [that] may incriminate him."[33]  By the same token, the Fifth Amendment "does not offer protection to a defendant who voluntarily incriminates himself[.]"[34]  "Absent some officially *coerced* self-accusation, the Fifth Amendment privilege is not violated by even the most damning admissions."[35]

---

[30] *Lefkowitz v. Turley*, 414 U.S. 70, 80 (1973) (quoting *Garrity*, 385 U.S. at 499).
[31] *Malloy v. Hogan*, 378 U.S. 1, 9 (1964).
[32] *Turner v. State*, 957 A.2d 565, 571 n.7 (Del. 2008) (internal quotation marks omitted).
[33] *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984) (internal quotation marks omitted).
[34] *Hardwick v. State*, 2012 WL 1067150, at *4 (Del. Mar. 27, 2012).
[35] *United States v. Washington*, 431 U.S. 181, 187 (1977).  *E.g.*, *Colorado v. Connelly*, 479 U.S. 157, 169–70 (1986); *Oregon v. Elstad*, 470 U.S. 298, 309 (1985).

The United States Supreme Court has emphasized repeatedly that the Fifth Amendment does not put criminal investigations in a "constitutional straitjacket."[36] The Fifth Amendment bars introduction of involuntary testimony at trial, not efforts to make a witness testify involuntarily.[37] To the contrary, one of the "necessary and most important powers of the States . . . to assure the effective functioning of government in an ordered society is the broad power to compel residents to testify in court or before . . . agencies."[38] Indeed, witness testimony "constitutes one of the [g]overnment's primary sources of information."[39] Limiting the Fifth Amendment to involuntary statements thus "assures that the [g]overnment obtains all the information to which it is entitled[]" and that it needs to investigate for the truth.[40]

The "very purpose" of the government's power to compel testimony is to "uncover the truth."[41] False information, then, "has no place" in government investigations.[42] "Our legal system provides methods for challenging the

---

[36] *Vega v. Tekoh*, --- S. Ct. ----, 2022 WL 2251304, at *5 (U.S. June 23, 2022) (internal quotation marks omitted).

[37] *See, e.g.*, *Chavez v. Martinez*, 538 U.S. 760, 767–70 (2003) (plurality opinion); *New Jersey v. Portash*, 440 U.S. 450, 457–59 (1979). *See also Murphy*, 465 U.S. at 428 ("The Constitution does not forbid the asking of criminative questions." (alteration and internal quotation marks omitted)).

[38] *Kastigar v. United States*, 406 U.S. 441, 444 (1972).

[39] *Murphy v. Waterfront Comm'n*, 378 U.S. 52, 94 (1964) (White, J., concurring). *Accord Kastigar*, 406 U.S. at 444; *State v. Conner*, 295 A.2d 704, 708 (Del. 1972).

[40] *Garner v. United States*, 424 U.S. 648, 658 n.11 (1976).

[41] *Brogan v. United States*, 522 U.S. 398, 402 (1998) (emphasis omitted).

[42] *United States v. Mandujano*, 425 U.S. 564, 576, 582 (1976) (plurality opinion).

[g]overnment's right to ask questions—lying is not one of them."[43]   Because perjury

is a crime, not a valid response to questioning, the decision to "communicat[e] false

information" during a government investigation is not considered a product of

"testimonial compulsion."[44]   In other words, false statements made during

interrogation are deemed voluntary, not coerced.[45]   Accordingly, false statements

are not protected by the Fifth Amendment from subsequent prosecution.[46]

---

[43] *Bryson v. United States*, 396 U.S. 64, 74 (1969).

[44] *United States v. Knox*, 396 U.S. 77, 82 (1969).  *Accord Commonwealth v. Good*, 337 A.2d 288, 290 (Pa. 1975); *see Bryson*, 396 U.S. at 74 ("A citizen may decline to answer the question, or answer it honestly, but he cannot with impunity *knowingly and willfully* answer with a falsehood." (emphasis added)); *see also Shotwell Mfg. Co. v. United States*, 371 U.S. 341, 348–50 (1963) (holding false statement given under grant of immunity was admissible as voluntarily made in subsequent criminal prosecution based on the statement).

[45] *See, e.g.*, *LaChance v. Erickson*, 522 U.S. 262, 266 (1998) ("[T]he predicament of being forced to choose between incriminatory truth and falsehood . . . does not justify perjury." (omission in original) (internal quotation marks omitted)); *see also Harris v. New York*, 401 U.S. 222, 225 (1971) (The Fifth Amendment "privilege cannot be construed to include the right to commit perjury."); *cf. McKune v. Lile*, 536 U.S. 24, 49 (2002) (O'Connor, J., concurring in the judgment) ("Not all pressure compels incriminating statements." (alterations and internal quotation marks omitted)).

[46] *See Knox*, 396 U.S. at 82 (Choosing to lie "is a course" that the Fifth Amendment gives an accused "no privilege to take."); *cf. Chavez*, 538 U.S. at 769 (plurality opinion) ("[T]hose subjected to coercive police interrogations have an *automatic* protection from the use of their *involuntary* statements . . . in any subsequent criminal trial." (second emphasis added)).

### b. *Garrity* does not protect false statements.

*Garrity* did not rewrite the Fifth Amendment. *Garrity* immunity parallels Fifth Amendment immunity.[47] As observed, "the Fifth Amendment does not protect perjury[.]"[48] So "*Garrity* does not protect false testimony[]" either.[49] Indeed, "*Garrity* protection is not a license to lie . . . ."[50] Accordingly, every post-*Garrity* decision has held that *Garrity* immunizes only *truthful* statements made by police officers under penalty of termination.[51]

---

[47] *See Garrity*, 385 U.S. at 500 (basing immunity doctrine on the due process elements incorporated into the Fifth Amendment by the Fourteenth Amendment); *see also United States v. Stein*, 440 F. Supp. 2d 315, 328 (S.D.N.Y. 2006) ("*Garrity* held that statements obtained from police officers in circumstances in which invocation of the Fifth Amendment would have required termination of their employment were coerced.").

[48] *United States v. Yurasovich*, 580 F.2d 1212, 1219 (3d Cir. 1978). *E.g.*, *United States v. Apfelbaum*, 445 U.S. 115, 126–31 (1980) (articulating principle and explaining reasoning); *United States v. Wong*, 431 U.S. 174, 178 (1977) (same).

[49] *United States v. Waldon*, 363 F.3d 1103, 1112 (11th Cir. 2004), *cert. denied*, 543 U.S. 867 (2004).

[50] *United States v. Veal*, 153 F.3d 1233, 1243 (11th Cir. 1998), *cert. denied*, 526 U.S. 1147 (1999).

[51] *E.g.*, *United States v. Holland*, 417 F. App'x 359, 361 (4th Cir. 2011); *McKinley v. City of Mansfield*, 404 F.3d 418, 427 (6th Cir. 2005), *cert. denied*, 546 U.S. 1090 (2006); *Veal*, 153 F.3d at 1240–43, *cert. denied*, 526 U.S. 1147; *United States v. Devitt*, 499 F.2d 135, 142 (7th Cir. 1974), *cert. denied*, 421 U.S. 975 (1975); *United States ex rel. Annunziato v. Deegan*, 440 F.2d 304, 306 (2d Cir. 1971). *See also United States v. Thomas*, 612 F.3d 1107, 1128 (9th Cir. 2010); *United States v. White*, 887 F.2d 267, 274 (D.C. Cir. 1989); *Fraternal Ord. of Police, Lodge No. 5 v. City of Philadelphia*, 859 F.2d 276, 281 (3d Cir. 1988); *United States v. Phillips*, 540 F.2d 319, 332 (8th Cir. 1976).

False statements are not considered "coerced" under the Fifth Amendment or *Garrity*.[52] As a result, false statements are not immune to charges based on the statements' falsity even when an officer makes the statements between the "rock" of self-incrimination and the "whirlpool" of termination:[53]

> Giving a false statement is an *independent* criminal act that occurs *when* the individual makes the false statement; it is *separate* from the events to which the statement relates . . . . *Garrity*-insulated statements regarding *past* events under investigation must be *truthful* to avoid *future* prosecution for such crimes as perjury and obstruction of justice.[54]

Put another way, "[n]either *Garrity* nor the Fifth Amendment prohibits prosecution . . . for false statements or other crimes committed while making *Garrity*-protected statements."[55] An officer "may not abuse *Garrity* by committing a crime involving false statements and thereafter rely on *Garrity* to provide a safe haven[.]"[56]

---

[52] *See Devitt*, 499 F.2d at 142 (explaining that *Garrity*'s protection of truthful statements provides "adequate protection" of Fifth Amendment rights and therefore declining to extend *Garrity* to false statements), *cert. denied*, 421 U.S. 975.

[53] *Garrity*, 385 U.S. at 498.

[54] *Veal*, 153 F.3d at 1243 (citation omitted). *See, e.g.*, *United States v. Hendricks*, 2015 WL 224747, at *2 (D. Or. Jan. 15, 2015) ("False statements, *even when compelled*, may be used in a prosecution for the falsity of the statements." (emphasis added)); *United States v. Dellinger*, 2013 WL 4177400, at *4 (D. Ariz. Aug. 15, 2013) ("*Garrity* does not require the suppression of false statements that amount to an obstruction of justice . . . . Instead, the statements form the basis for an independent criminal charge—obstruction of justice . . . ." (citations omitted)).

[55] *United States v. Jones*, 489 F. App'x 364, 365 (11th Cir. 2012) (emphasis and internal quotation marks omitted).

[56] *United States v. Cook*, 526 F. Supp. 2d 1, 9 (D.D.C. 2007) (internal quotation marks omitted), *aff'd*, 330 F. App'x 1 (D.C. Cir. 2009).

**2. Alleged to be false, MacColl's statements are not protected by *Garrity*.**

When forced to choose between "self-incrimination or unemployment," a police officer "is not privileged to resort to the third alternative, *i.e.*, lying."[57] So *Garrity* gave MacColl only two options. He could have spoken truthfully. Or, he could have said nothing at all.[58] He was not free to lie.

Crediting the indictment's allegations as true, MacColl made false statements during his IA interviews about his gun barrel and post-shooting whereabouts. Because his statements may be false, the State is permitted under *Garrity* to use his statements against him to prove perjury, obstruction, and public corruption. MacColl's statements are admissible and not privileged.

**3. MacColl's contrary arguments are unavailing.**

*Garrity* does not protect MacColl's allegedly false statements. To achieve the opposite result, MacColl advances two unsuccessful arguments.

MacColl first tries to distinguish cases in which false statements were not given *Garrity* immunity. He observes, for example, that some of those cases did not

---

[57] *Annunziato*, 440 F.2d at 306.

[58] *See, e.g.*, *United States v. Balsys*, 524 U.S. 666, 672 (1998) ("[The Fifth Amendment] can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory . . . ." (internal quotation marks omitted)); *Bradley v. State*, 559 A.2d 1234, 1243–44 (Del. 1989) (observing same).

specifically arise from an "internal investigation."[59]  But this is a red herring. *Garrity* does not insulate "false statements from a later prosecution . . . *whether they occur under oath, with immunity, or during a governmental investigation.*"[60]  In this case, MacColl was given "immunity" "during a governmental investigation" to answer OPS's questions "truthfully."[61]  Labels used in other cases do not matter.

As a fallback, MacColl turns to semantics.  Recall that the Form told MacColl that his "admissions" would not be used against him "in a subsequent criminal proceeding."[62]  MacColl now defines the word "admission" to mean any "oral assertion," *i.e.*, any "statement."[63]  So defined, he reasons that the Form immunized his true *and* false statements from subsequent prosecution.  MacColl's interpretation is strained and not supported by the Form.

An "admission" is a "statement in which someone admits that something is true or that he or she has done something wrong[.]"[64]  In contrast, a "statement" is merely a "verbal assertion[.]"[65]  So an admission necessarily is a statement, but a

---

[59] Def.'s Reply to State's Opp'n to Def.'s Mots. to Dismiss & in Lim. ¶ 4.
[60] *Veal*, 153 F.3d at 1241 (emphasis added).
[61] Ex. B to Def.'s Mot. to Dismiss ¶ 5 (Investigation Rights Form).
[62] *Id.* ¶ 4.
[63] Del. R. Evid. 801(a), (d)(2).
[64] *Admission*, Black's Law Dictionary (11th ed. 2019).
[65] *Statement*, in *id.*

statement is not necessarily an admission. Indeed, the Form itself adopted this logic. It used the words "admissions" and "statements" separately, not interchangeably.[66]

MacColl's statements are not admissions. He never said that he committed a crime or violated WPD policy. Admissions acknowledge truth. MacColl's statements are allegedly false.

Context reinforces these conclusions. The Form explained that MacColl's "admissions" would not be used against him in a criminal case. MacColl signed the Form before an interrogation. Anyone in his position thus would think that "admission" means "confession."[67] After all, *Garrity* was designed to protect police officers who choose self-incrimination over unemployment.[68] *Garrity* did not hamstring the government's efforts to obtain the truth.[69]

Neither did the Form. The Form immunized MacColl from liability for any self-incriminating truths. This protection was consistent with the purpose of WPD's

---

[66] *Compare* Ex. B to Def.'s Mot. to Dismiss ¶ 4 (Investigation Rights Form) ("admissions"), *with id.* ¶ 5 ("statements or responses").

[67] *See Admission*, Merriam-Webster (online ed.), https://www.merriam-webster.com/dictionary/admission#synonyms (last visited June 15, 2022) (classifying "confession" as a synonym for "admission"); *Confession*, Black's Law Dictionary (11th ed. 2019) ("A criminal suspect's oral or written *acknowledgment of guilt*, often including details about the crime. *Cf. Admission*[.]" (emphasis added)).

[68] *See Garrity*, 385 U.S. at 496–97.

[69] *See Moody v. Mich. Gaming Control Bd.*, 871 F.3d 420, 429 (6th Cir. 2017) ("*Garrity* immunity prohibits the use of coerced statements in criminal proceedings, but it does not protect against the act of coercion itself.").

investigation—*i.e.*, to determine whether MacColl's actions violated WPD policy or constituted a crime.[70]

For these reasons, the Form did not also privilege MacColl to lie. If MacColl were allowed to lie to OPS, then the Form would not have required him to answer "truthfully."[71] If MacColl were not required to answer truthfully, then there would have been no point in interviewing him. MacColl's counterarguments are contradicted by the basic reason he signed the Form.

## B. MacColl lacks standing to enforce LEOBOR.

MacColl alternatively relies on LEOBOR. He contends that LEOBOR prevents the State from requesting, and WPD from disclosing, police IA files. Given MacColl's termination as a police officer, the Court questioned MacColl's standing to enforce a LEOBOR violation.[72] The parties responded with supplemental briefing. Having reviewed those filings, the Court concludes that MacColl's LEOBOR standing fails for lack of redressability.

---

[70] *See, e.g.*, Exs. A–B to Def.'s Mot. to Dismiss (WPD Compls.) (charging obstruction violations of WPD policy based on unauthorized field weapon modifications and unauthorized retention of removed gun parts); *see also United States v. Henderson*, 406 F. Supp. 417, 428 n.19 (D. Del. 1975) (explaining that immunity is designed to prevent—not promote—false testimony by incentivizing truth-telling).

[71] Ex. B to Def.'s Mot. to Dismiss ¶ 5 (Investigation Rights Form).

[72] Although not raised by the parties in their initial briefing, standing is a jurisdictional question the Court must raise *sua sponte*. *E.g.*, *Riverfront Hotel LLC v. Bd. of Adjustment*, 2019 WL 3884031, at *1 (Del. July 11, 2019); *Mills v. Trans Caribbean Airways, Inc.*, 272 A.2d 702, 704 (Del. 1970).

**1. MacColl bears the burden to demonstrate his standing.**

Every claimant must have standing.[73]  Standing is "the right . . . to enforce a claim or to redress a grievance."[74]  "It is concerned only with the question of *who* is entitled to mount a legal challenge . . . ."[75]  Accordingly, "standing is . . . a threshold question that the Court may not avoid."[76]

The claimant bears the burden to establish its standing.[77]  To establish standing, a claimant must show, among other things, an "injury in fact, which is the invasion of a legally protected interest within the zone of interest sought to be protected or regulated by the statute."[78]  The injury must be "concrete and particularized . . . not conjectural or hypothetical."[79]  "For an injury to be particularized, it must affect the [claimant] in a personal and individual way."[80]

---

[73] *E.g.*, *Ala. By-Prods. Corp. v. Cede & Co.*, 657 A.2d 254, 264 (Del. 1995).
[74] *Dover Hist. Soc'y v. Dover Plan. Comm'n*, 838 A.2d 1103, 1110 (Del. 2003) (internal quotation marks omitted).
[75] *Stuart Kingston, Inc. v. Robinson*, 596 A.2d 1378, 1382 (Del. 1991).
[76] *Morris v. Spectra Energy Partners (DE) GP, LP*, 246 A.3d 121, 129 (Del. 2021) (alteration and internal quotation marks omitted).
[77] *E.g.*, *Dover Hist. Soc'y*, 838 A.2d at 1109.
[78] *Oceanport Indus., Inc. v. Wilmington Stevedores, Inc.*, 636 A.2d 892, 904 (Del. 1994).
[79] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up).
[80] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (internal quotation marks omitted).  *See Stuart Kingston*, 596 A.2d at 1382 (The claimant's interest "must be distinguishable from the interest shared by other members of a class[.]").

Injury alone does not confer standing. Standing requires injuries to be "redressable" too.[81] An injury is not redressable unless it is "likely, as opposed to merely speculative," that the requested relief will remedy the alleged violation.[82] "Relief that does not remedy the injury cannot bootstrap" a claim into court that the asserting party otherwise would have no standing to bring.[83]

## 2. MacColl's claimed LEOBOR violation is not redressable.

"LEOBOR was passed . . . to provide uniform procedural rights to officers under investigation by their own departments."[84] Among those rights is a confidentiality protection ("Section 9200(c)(12)").[85] Section 9200(c)(12) provides:

> All records compiled as a result of any investigation subject to the provisions of this chapter and/or a contractual disciplinary grievance procedure shall be and remain confidential and shall not be released to the public.[86]

Section 9200(c)(12), however, does not specify any remedies for a violation. In fact, LEOBOR "does not contain any remedy provisions" that authorize relief in

---

[81] *E.g.*, *Oceanport Indus.*, 636 A.2d at 904.

[82] *Lujan*, 504 U.S. at 561 (internal quotation marks omitted).

[83] *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998).

[84] *Brittingham v. Town of Georgetown*, 113 A.3d 519, 525 (Del. 2015).

[85] *See* 11 *Del. C.* § 9200(c)(12). *See also id.* § 9200(d), (d)(2).

[86] *Id.* § 9200(c)(12).

a Delaware court.[87]  It does not even "make any provision for judicial . . . review[.]"[88]

Administrative law does not either.[89]

Judicial limitations on the scope of LEOBOR review reflect the scope of LEOBOR itself.  LEOBOR rights apply in "law enforcement disciplinary proceedings."[90]  In other words, LEOBOR exclusively affords due process-based rights to challenge police agency action that results in wrongful terminations.  That is why terminated officers typically use federal civil rights statutes and analogous theories to sue police agencies—not the State[91]—for procedural violations.[92]  Otherwise, Delaware courts have found only mandamus relief available for

---

[87] *Burge v. City of Dover*, 1987 WL 12311, at *7 (Del. Ch. June 8, 1987).

[88] *Mock v. Div. of State Police*, 2022 WL 1744439, at *4 (Del. Ch. May 31, 2022).

[89] *See* 29 *Del. C.* § 10161 (2018) (Delaware Administrative Procedures Act) (omitting provisions for judicial review of decisions rendered by LEOBOR-defined police agencies).

[90] 11 *Del. C.* § 9209.

[91] Indeed, the only case MacColl cites was brought by a terminated officer against the Cheswold Police Department, not the State.  *See* Def.'s Suppl. Br. at 2 (discussing *Alexander v. Town of Cheswold*, 2007 WL 1849089 (Del. Super. Ct. June 27, 2007)).

[92] *See, e.g.*, *Martinez v. Dep't of Homeland Sec.*, 2019 WL 1220305, at *10–11 (D. Del. Mar. 15, 2019; *Poulos v. City of New Castle*, 2014 WL 7205169, at *3 (D. Del. Dec. 15, 2014); *Izquierdo v. Sills*, 68 F. Supp. 2d 392, 409–10 (D. Del. 1999); *Burge*, 1987 WL 12311, at *7.  For that reason, it usually is police agencies—not police officers—who raise non-disclosure privileges.  *See Jones v. City of Wilmington*, 299 F. Supp. 2d 380, 393 (D. Del. 2004) ("According to Defendants, disclosure of the information Plaintiff seeks, specifically the OPS files, is clearly prohibited by § 9200(c)(12) . . . ." (internal quotation marks omitted)); *see also Bailey v. City of Wilmington*, 1997 WL 557555, at *3 n.3 (D. Del. Aug. 14, 1997) ("Because of this disposition, the Court also does not reach the issue, argued in the alternative by the City, that any complaint filed with [OPS] is protected by a common law privilege.").

LEOBOR violations that result in terminations.[93] Any other claim for a "failure to follow" LEOBOR's "procedural requirements"[94] (*e.g.*, Section 9200(c)(12)) is unreviewable in this Court.[95]

MacColl's claim is unreviewable. Notably, he did not sue WPD for wrongful termination or for violating LEOBOR's disciplinary procedures. Nor has he sought a writ of mandamus. He did not even move to suppress or allege that the State committed a discovery violation. Instead, he has sought Section 9200(c)(12) relief against the State through dispositive criminal motions. LEOBOR's plain language does not support this approach. Neither does its fundamental purpose. To the contrary, LEOBOR was enacted to address "inconsistencies between departmental procedures" governing officers' disciplinary rights.[96] A ruling that excludes

---

[93] *See Brittingham*, 113 A.3d at 529–30 (observing potential availability of mandamus but denying relief as technical and moot); *Mock*, 2022 WL 1744439, at *4 (observing various employment-based violations subject to mandamus relief).

[94] *Mock*, 2022 WL 1744439, at *4.

[95] *See, e.g.*, *id.* at *7; *Sapienza v. Del. State Univ. Police Dep't*, 2020 WL 4299137, at *2 (Del. Super. Ct. July 24, 2020); *Haden v. Bethany Beach Police Dep't*, 2014 WL 2964081, at *2 (Del. Super. Ct. June 30, 2014); *Smith v. Dep't of Pub. Safety*, 1999 WL 1225250, at *11 (Del. Super. Ct. Oct. 26, 1999); *Wescott v. City of Milford Police*, 1995 WL 465188, at *4 (Del. Super. Ct. July 31, 1995). *See also Connick v. Myers*, 461 U.S. 138, 143 (1983) ("[G]overnment offices could not function if every employment decision became a constitutional matter.").

[96] *Brittingham*, 113 A.3d at 525 (internal quotation marks omitted). MacColl misquotes this passage about inconsistent departmental procedures. Def.'s Suppl. Br. at 2. The General Assembly's concern was about "inconsistencies . . . in *intradepartmental disciplinary hearings*," *Alexander*, 2007 WL 1849089, at *3 (emphasis added) (internal quotation marks omitted), not in criminal prosecutions brought against police officers, Def.'s Suppl. Br. at 2. Whether "DOJ is exempt

21

evidence or dismisses an indictment in a criminal case due to a LEOBOR violation would grant a law enforcement officer immunities afforded no other class of citizens anywhere. That treatment also would contradict the legislature's goal of procedural harmony and improperly widen this Court's narrow review of LEOBOR claims.

In short, MacColl attacked the wrong party—the State, rather than WPD. LEOBOR created due process rights enforceable against police agencies only. Assuming the State violated Section 9200(c)(12), MacColl's has no relief under LEOBOR. The Court cannot redress an injury that it cannot review.[97]

MacColl resists this conclusion in a several unavailing ways. He first urges that the State deployed its subpoena to "cherry pick" "confidential" and self-incriminating statements from the interviews.[98] This position merely repackages his *Garrity* claim as ground for LEOBOR relief. But the Fifth Amendment is not a "general protector of privacy[.]"[99] And a party may not "bootstrap" its standing to assert one claim to the standing on which a separate, failed claim had been based.[100] MacColl's substantive protections against government coercion come from the Fifth

---

from" LEOBOR is a question that must await another day. Def.'s Suppl. Br. at 2. MacColl lacks standing to prompt such review.

[97] *See Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 65–66 (1992) ("[T]he question of what remedies are available under a statute . . . is analytically distinct from the issue of whether [a] right exists in the first place." (internal quotation marks omitted)).

[98] Def.'s Suppl. Br. at 3.

[99] *Fisher v. United States*, 425 U.S. 391, 401 (1976).

[100] *Steel Co.*, 523 U.S. at 107.

Amendment, not LEOBOR. The Court has ruled that MacColl's allegedly false statements were not "compelled" under the Fifth Amendment. MacColl cannot reassert his Fifth Amendment "compulsion" argument in the guise of an imaginary right to eliminate the State's power to "compel" his statements from someone else.

Undaunted, MacColl next tries to stand in WPD's shoes. He suggests that the State's subpoena forced WPD to relinquish the IA interviews, thereby causing *WPD* harm MacColl now seeks to remedy. Standing "cannot be inferred argumentatively" but rather "must affirmatively appear in the record."[101] Here, WPD willingly complied with the subpoena. So MacColl cannot assert "third party standing."

To derive standing from another person's injury, the claimant must show, among other things, that the person faced "obstacles that prevent[ed] it from pursuing its own claims."[102] WPD did not object to the State's subpoena. And MacColl does not identify an obstacle that blocked WPD from objecting. WPD thus effectively waived MacColl's challenge to the subpoena. Accordingly, the subpoena did not cause WPD an injury-in-fact. MacColl lacks standing to argue otherwise.

As a last resort, MacColl backdoors a lawsuit against WPD that he never filed. MacColl now claims that "WPD's production of the OPS file in response" to the

---

[101] *Spencer v. Kemna*, 523 U.S. 1, 10–11 (1998) (internal quotation marks omitted).
[102] *Pa. Psychiatric Soc'y v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 288–89 (3d Cir. 2002), *cert. denied*, 537 U.S. 881 (2002).

23

State's subpoena violated Section 9200(c)(12).[103] Even if that is true, MacColl still would lack standing.

An injury's redressability is assessed "at the time" the claim is raised.[104] Here, the proverbial damage has been done. At the time MacColl's motions were filed, WPD had already disclosed the IA interviews to the State. There is nothing the Court can do about that now.[105]

True, courts have "loosened the strictures" on redressability for injuries involving "procedural rights" that protect "concrete interest[s]."[106] LEOBOR does use procedure to safeguard disciplinary rights. Even so, "the relaxed redressability requirement is met" only where "correcting the alleged *procedural* violation could still change the *substantive* outcome in the [claimant's] favor[.]"[107] At this point, correcting any Section 9200(c)(12) violation would not put the interview transcripts back in their folders or wipe their contents from the State's memory. Any correction

---

[103] *See* Def.'s Suppl. Br. at 3.

[104] *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 191 (2000). *See generally Advanced Mgmt. Tech., Inc. v. FAA*, 211 F.3d 633, 636 (D.C. Cir. 2000) (This rule "may sound like one of mootness—a justiciable controversy existed but no longer remains—but the timing makes [it] one of standing.").

[105] There is an exception for injuries that are ongoing or will recur in the future. *See City of Los Angeles v. Lyon*, 461 U.S. 95, 107–10 (1983). MacColl has not offered a reason to think WPD continues to or again will disclose IA material about him.

[106] *Summers v. Earth Is. Inst.*, 555 U.S. 488, 496–97 (2009) (emphasis and internal quotation marks omitted). *See Lujan*, 504 U.S. at 572 n.7.

[107] *Narragansett Indian Tribe Hist. Pres. Off. v. FERC*, 949 F.3d 8, 13 (D.C. Cir. 2020) (emphases added) (original emphasis omitted).

also is not likely to make this prosecution go away.[108]  The Court cannot undo what already has been done.  Relaxed or not, redressability has not been satisfied here.

The Court is mindful that a decision addressing LEOBOR on the merits would serve the public interest.  Alerted to nationally reported instances of police misconduct, Delaware legislators recently have sought to amend Section 9200(c)(12) "to increase transparency and allow for more meaningful oversight."[109] The possible real-world impact of the Senate's proposed amendments has polarized debate.[110]  Nevertheless, without standing there is no "'case or controversy' that is appropriate for exercise of the court's judicial powers."[111]  No matter an issue's importance, the Court cannot resolve it without jurisdiction to do so.  A closer

---

[108] *See In re Grand Jury Investigation*, 445 F.3d 266, 273 (3d Cir. 2006) ("[N]o subpoena case is moot so long as the court can provide redress by sealing the documents or testimony against future use." (internal quotation marks omitted)); *cf. Brittingham*, 113 A.3d at 530 ("[M]andamus is not the proper remedy to compel the undoing of acts already done or the correction of errors or wrongs already perpetrated[.]" (internal quotation marks omitted)).

[109] *Synopsis* to An Act to Amend Title 11 of the Delaware Code Relating to the Law-Enforcement Officers' Bill of Rights, S.B. 149, 151st Gen. Assemb. (2022).

[110] *Compare* Morgan R. Kelly, *New Data Shows Delawareans Overwhelmingly Support LEOBOR Reform*, Del. Am. Civ. Liberties Union (June 22, 2021, 5:15 PM), https://www.aclu-de.org/en/news/new-data-shows-delawareans-overwhelmingly-support-leobor-reform, *with* Patrick A. Ogden, Opinion, *Delaware General Assembly Must Partner with Police Leaders on Meaningful Reform*, Del. Online (Mar. 26, 2022, 4:46 AM), https://www.delawareonline.com/story/opinion/2022/03/26/delaware-general-assembly-must-partner-police-leaders-reform/7168291001/.

[111] *Dover Hist. Soc'y*, 838 A.2d at 1110.

analysis of LEOBOR's effects on criminal prosecutions and police disclosures must await another day.

## CONCLUSION

*Garrity* does not protect MacColl's allegedly false statements.  And he lacks standing to enforce a claim under LEOBOR.  Accordingly, MacColl's motions are **DENIED**.

**IT IS SO ORDERED**.


Charles E. Butler, Resident Judge